## *(5) Ground Raised continued.*

**Please see Exhibit 1A-1C for DVS search that shows officer Werner (and no one else) searched "Chris Maurice Welch" from 02/27/2017 - 04/17/2017 as Officer Werner Stated on his warrant affidavit, police report and in his testimonies under oath; regarding the use of this system during his investigation while speaking to a CRI.

**Please See Exhibits 2A-2F Showing "Chris Maurice Randolph Welch" was queried through the BCA database (3) times in March of 2017. (1) for a traffic stop on March 15, 2017, at 02:20 pm (which the BCA's assistant director of training and audit Gary Link (who is the same person who worked with and completed an audit for Officer Werner) confirmed on a recorded call was not Officer Werner's Credentials on 03/15/2017). (2) on 03/27/2017 at approximately midnight (just hours prior to the search warrant application being submitted, signed and executed.) (3) on 03/27/2017 at 12:20PM once I was arrested and detained. This would prove that Officer Werner never met with a CRI on 03/24/2017, "queried "Chris Welch" found a "Chris Maurice Randolph Welch" DOB: 05/26/1985" as stated in the warrant affidavit, police reports and during testimonies under oath (motions hearing and trial hearing); since it was not captured in the DVS/DMV or BCA database.

## *Ground one: Ineffective Counsel. (Continued) By Attorney Shannon Elkins.*

**(Ground 1: Argument A):** Terry Brown should have been called as a witness during trial for the following reasons. Attorney Shannon Elkins and I had reason to believe Terry Brown was involved with my case, although Officer Werner boldly denied it during the motions hearing. During the warrant execution on 03/27/2017, in the interview between Officer Werner and Terry Brown; once Officer Werner states that the interview is concluded, (Please note that Terry Brown may have thought Officer Werner was no longer recording. My assumption is that there may have been a signal to Officer Werner to cover the microphone because after this point the rest of the interview (in parts) is inaudible. Prior to this point you could hear the interview clearly and no one else's interview is inaudible.). However, what you can hear clearly is Terry Brown Stating,

(Referencing the below, OW: Officer Werner- TB: Terry Brown. This conversation begins at **3 minutes and 40 seconds** of the 7 minute and 56 second interview between Officer Werner and Terry Brown)

OW: What?
TB: I work with the detective
OW: What?
TB: I work with the detective at the Police department in St. Paul. His Name is Zebro. He's working for the uhh
OW: who?
TB: Zebro. Dan Zebro.

**(At 5 minutes and 22 second)**

OW: Where did these guns come from? St. Cloud?

RECEIVED
NOV 22 2021
CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA
SCANNED
NOV 23 2021
U.S. DISTRICT COURT MPLS

1

Terry Brown is the only person at the location during the warrant execution who had knowledge of the guns at the address and knew they'd allegedly come from "St. Cloud". Mr. Brown can be heard stating that he is working with "Dan Zebro from the St. Paul Police Department." However, even though Mr. Brown transported me to the address in his vehicle, (1) His vehicle was never searched, (2) his vehicle was never towed or seized and (3) his cell phone was never searched. Although, Mr. Brown himself was a felon; Mr. Brown was not charged regarding his presence during the warrant execution. The benefit of Officer Werner being questioned on cross examination regarding the audio, would have cured speculations of entrapment. Additionally, after the warrant execution officer Werner contacted my probation officer and told him that I was arrested for being in possession of "4 handguns, a digital scale. 5 pounds of K2, cash and K2 in my pocket". when the truth is, Officer Werner only confiscated nearly $500.00 from my person. Furthermore, Terry Brown being subpoenaed and examined would have cured the question of his knowledge of the evidence found at the location, my suspected criminal activity at the location and Mr. Brown's involvement with my case. Due to Attorney Elkins Ineffective assistance, the issues were not addressed.

**Please see Exhibit (3A): For Motion hearing testimony regarding Terry Brown from Officer Werner.

**Please see Exhibit (3B) (interview with John Lageson and Steve Horgan (my probation officer.)

**(Ground 1: Argument B):** Latreece Dobbins was a very good acquaintance/friend of Ms. Fate-Baugh (The tenant of the location.). Ms. Dobbins gave a statement to the investigator for Attorney Elkins on February 28, 2018, that Ms. Fate Baugh had only been a resident at the 3319 Aldrich Avenue address (where the warrant execution took place) for approximately 3 weeks. In this interview with the investigator, Ms. Dobbins stated in detail how she was a daily guest at Ms. Fate-Baugh's home (where she would spend many hours throughout the day). Ms. Dobbins confirmed that I had never been an overnight guest or daily visitor and verified that I'd never been witnessed with drugs or a firearm at the location. Ms. Dobbins also stated that in the 3 weeks Ms. Fate-Baugh lived at the location, she had only observed me at the location once (Saturday March 25th, 2017) for 20-30 minutes before leaving and never returning.

**Please See attachment #4 for Latreece Dobbins Statement with John M Lageson).

Chris Kevin Welch signed notarized documents to have a DVS and BCA audit completed only to assist with seeing if "Chris Kevin Welch" (Another Person by the name of Chris Welch) was searched, instead of "Chris Maurice Welch" since there was no query for "Chris Maurice Welch" from Officer Werner, nor any other employee of law enforcement during the time officer Werner claims to have spoken with a CRI. However, the audits for both "Chris Welch's" from the DVS and BCA would show "Chris Kevin Welch" was not <u>searched</u> through the DVS or BCA database either. A narrowed down search from March 16th, 2017 – March 26th, 2017 (even though officer Werner claimed to have searched the name "Chris Welch" on March 24th, 2017) showed NO law enforcement credentials searched/queried either Chris Welch during the process of the alleged investigation. Even knowing these facts (with the exception of the queried dates) neither witness was subpoenaed to testify during trial.

**Please see "Exhibit 5A-5D and Exhibit 6A-6C" for Chris Kevin Welch's BCA and DVS audit report.

2

***(Ground 1: Argument C):*** Ms. Denise Whitaker had been my stylist for many years and also had the opportunity to speak with attorney Shannon Elkins investigator. Ms. Whitaker was prepared to testify that in the past 12 years of knowing me and being my stylist, I had never worn a "Mini afro". Ms. Whitaker saw and styled my hair frequently and on the day prior to the warrant execution. Ms. Whitaker agreed to testify to the length of my hair, how it would have been impossible to alter my hair into a mini afro, or even "alter" hair from a mini afro into braids (especially if the hair length extends beyond mid-back) within 72 hours. Also stating my hair texture is too "fine and silky" to be shaped into a mini afro as "coarse 4C hair textures would". There were 2 other Stylists, (Jessica Jackson and Alice Mugobi) who are both Licensed stylists and cosmetology trainers, who were willing to attack the "Mini afro" issue, since it seemed as though the judges and magistrates did not have a clear understanding of hair alterations; but neither witness was subpoenaed to testify.

** Please see exhibit #7 of photos of my hair length for a visual of why my appearance (in regard to my hair) could not be "altered into a mini afro".

***(Ground 1: Argument D.):*** When a list of these witnesses was sent to Attorney Elkins prior to trial, attorney Elkins claimed that the above witnesses (amongst others) were "Character witnesses" and to subpoena them to the trial; would "Open the door to allow the prosecutor to bring out my prior criminal convictions and arrests to prove my "Character is not good". My intentions were to attack the prosecutor's statements that I possessed drugs and firearms during the warrant execution; Attorney Elkins felt as though previous conviction would make me appear guilty, even if I was innocent during the current case.

**Please See Exhibit #8 with a copy of an email from Attorney Shannon Elkins to Kia Barnes.

Attorney Elkins failed to address the issue of Officer Werner fabricating a "fleeing" incident, which was ultimately used to assist the prosecutor with building evidence to attack my character. An incident where officer Werner claims other officers assisted him, but there were no additional police reports to support Officer Werner's claim of this alleged fleeing incident. Attorney Shannon Elkins and I agreed that there were multiple areas throughout my case where officer Werner raised credibility concerns, however Attorney Elkins failed to address them. Attorney Elkins never requested an Evidentiary hearing to address the alleged offense, especially since I had never been arrested, charged nor convicted pertaining to the incident. Had Attorney Elkins petitioned the courts for an evidentiary hearing, Attorney Elkins could have questioned Officer Werner regarding why i was never charged with an offense for the alleged incident, why officer Werner claims to have had other officers' assistance, however no other police reports were submitted. In the other incidents, there was BWC (Body Worn Cameras) video footage from officers, but in this alleged incident no proof the incident took place was ever submitted by other officers pertaining to this case. However, this was the case the prosecutor used to build my character. Due to Attorney Elkins failing to file a motion to petition the courts for an evidentiary hearing, the prosecutor was able to use this case during trial.

3

\*\* Please see Exhibit 9 of officer Werner's police report **ONLY.**

*(Ground 1: Argument E):* Attorney Elkins failed to impeach Office Schroeder as a witness for the prosecutor during trial. Officer Schroeder should have been impeached due to lack of credibility. The first issue was officer Schroeder furnishing a police report for the prosecutor approximately 2 days prior to my indictment. This police report was filed 09/26/2017 at 11:14PM (i was indicted 09/29/2017) for an incident he claims to have observed over 6 months prior to him submitting the police report. In the report, Officer Schroeder claims to have had previous contact with me and "reading about cases I had been involved in". Prior to the trial hearing I cannot recall ever coming into contact with Officer Schroeder, even researching with the Hennepin County records unit, no police report could be located involving Officer Schroeder and myself. Officer Schroeder also claimed that during the same time footage was provided showing that I was at a local restaurant; he had witnessed me at the 3319 address (in a truck with an unknown female.) previous to the warrant execution; but was unable to provide (1) dash cam footage (2) body camera footage (3) cell phone footage or photos. Although there was no physical evidence beyond word of mouth to support the allegations (neglecting the fact that I had actual video footage as proof of my whereabouts showing that I was at a local restaurant during the time and not at the address.) Officer Schroeder was allowed to testify during my trial.

\*\*Please see exhibit #10 of officer Schroeder's police report Submitted 09/26/2017 at 11:14PM

\*\*Please see Exhibit 11A-11G for officer Schroeder's testimony during trial. (Pages 56-62 of the motion hearing transcript)

\*\*Please See Exhibit 12A-12E For Kia Barnes's testimony to the footage with her and I at a local restaurant. (Page 246-250 of the trial hearing).

I have always proclaimed my innocence since the start of my case. I have always pointed out issues and concerns within the prosecution's discovery, petitioned the courts and written the district court Judge on multiple occasions; however, my representation failed to raise the issues adequately or effectively by way of an evidentiary hearing, motions or during cross examination. In most cases my attorney (Shannon Elkins) stated that she forgot to ask important questions during trial that could have helped prove that I was innocent. Had Attorney Elkins, subpoenaed certain witnesses (Terry Brown, Latreece Dobbins, Denise Whitaker or Jessica Jackson) the fact finders may have had a clear understanding of the facts of my case and the prejudice i endured. Also, Impeaching Officer Schroeder, Cross examining Officer Werner regarding cross-contamination issues/mishandling of evidence and also questioning the BCA forensic expert regarding the DNA testing and cross-contamination issues,(with the evidence being moved to various locations) and officer Werner administering first Aid to a suspect, while also handling the evidence, the questions of how my DNA ended up on a firearm (i know for a fact I'd never personally touched or possessed) would have been explained to myself, law enforcement and the fact finders would understand how harmful cross contamination is, when it pertains to evidence at a crime scene.

**Please See exhibit #13A -13C of the 2 police reports stating that "the adult male with the orange shirt had a cut on his left thumb/hand due to the broken glass."
**Please see exhibit #14A of crime scene photos of me detained wearing an

"orange shirt".

**Please see exhibit #15 of a photo from the crime scene with my finger Cut.

**Please see exhibit #16 with the case report, where all the evidence I allegedly possessed was found by Officer Werner (note that the items that were alleged to be found on my person were **ALL** retrieved by Officer Werner).

### *Ground one: Ineffective Counsel. By Gretchen Gurstelle.*

Attorney Gretchen Gurstelle was appointed as my counsel after Shannon Elkins was removed from my case. When I advised Attorney Gurstelle of my newly discovered evidence and asked her to submit motions for a new trial and pointed out errors that my previous attorney refused to argue; she simply replied, "My only job is to help you with sentencing". Anytime I would question Attorney Gurstelle about her lack of communication and unwillingness to effectively represent me, she would (1) Hang up on me. (2) Yell or ignore my calls. (3) Tell me "If you don't like what I'm doing, write the judge and tell her to remove me. (Which i did) Or (4) "File your own motions and make your arguments Pro se."

** See email attached exhibit 17A and 17B of the email exchange between Gretchen Gurstelle and Kia Barnes.

During my sentencing hearing Honorable Ann D Montgomery, denied the motions raised during pretrial and post-conviction, so that they could be raised on appeal. (Please see Page 41 of the sentencing hearing). Attorney Gurstelle refused to argue the denied motions on appeal. At the conclusion of the sentencing hearing, Judge Ann D Montgomery stated,

"Mr. Welch, I think it makes sense for Ms. Gurstelle to represent you long enough to file a notice of appeal so that we've got that appeal on record. So, whether you want her to write the appeal or you want to represent yourself on appeal on your own is your decision."

After I notified Judge Montgomery that I would like to move forward pro se, Judge Montgomery stated to Attorney Gurstelle

"You are relieved of your responsibility subsequent to the filing of the notice of

appeal."

**Please See Exhibit #18A and #18B (pages 40 & 41 of the sentencing hearing).

However, since attorney Gurstelle refused to withdraw herself prior to my appeal and after "the subsequent filing of the notice to appeal." I was unable to argue my newly discovered evidence and the

and denied motions; due to having representation. Even though I filed motions to remove attorney Gurstelle as my attorney. The courts denied my motions and supplemental pro se brief. Furthermore, once my case was affirmed, Attorney Gurstelle finally withdrew herself as my counsel.

** Please see attached exhibit #19 order from Appeals court denying pro se supplemental brief due to having counsel.

### (Ground Two: MISCONDUCT OF a PUBLIC OFFICER OR EMPLOYEE. Continued)

During the execution of the warrant, led by Officer Werner, evidence shows that the evidence at the scene was mishandled. The firearms are pictured in one area and then another area.

**Please see exhibit #20 from warrant execution)

Not only were the firearms mishandled, but DNA cross contamination was a huge issue in my case. I know for a fact I never touched a single drug or firearm at this address. Had my attorney properly argued the DNA testing on cross examination and questioned if my DNA could have shown on the Ruger .22 due to cross contamination. We may have found out exactly how my DNA got on the firearm. Cross Contamination became an issue when Law enforcement broke 2 windows, and I was cut by the broken glass. Officer Werner (the same person who filed a false warrant application, placed false police reports and handled the evidence.) is the same person who cleaned my injury.

**Please reference exhibit #21A, 21B, and 21C.

### (Ground Three: INTENTIONAL FABRICATION OF EVIDENCE & POLICE REPORTS. Continued.)

**(Ground 3: Argument A): Background-** Law enforcement has maintained a bias against me since 2016 when I was wrongfully accused and charged of murder in the death of a 3-year-old child. I have always tried to clear my name and argue my innocence, but law enforcement has since maintained tunnel vision assuming I am in fact the suspect and has treated me as such. Even though Charges were recently dismissed in October of 2021, I still believe Law enforcement feels as though I "slipped through the cracks". Never once taking into consideration that a forensic specialist measured the length of my arms and ruled me out as a potential suspect. In addition to the father of the child who was present and witness affidavits that state I was not in the vehicle during the shooting, Law enforcement has preserved a prejudice against me. From the day charges were placed against me, deferred and I was released, all the way up until the day I was arrested again by the same person "officer Werner" and sent to the workhouse in May of 2017, I was the target for MPD. I was harassed by the MPD. My family and friends were harassed and targeted by MPD due to being family and acquaintances of mine. In a letter to Judge Ann D Montgomery, (during sentencing) I expressed the aforementioned. The only reason I am stating the above, is because I am trying to establish the motive behind why Officer Werner and his fellow officers' have falsely arrested me, furnished fabricated police reports against me and have now wrongfully convicted me of a crime I did not commit.

***Facts of the Newly Discovered Evidence-*** The BCA and DVS both have confirmed that Officer Jeffrey Werner never searched "Chris Welch". Neither Myself (Chris Maurice Welch) nor "Chris Kevin Welch". Had Officer Werner queried "Chris Welch" both would have come up. The BCA and DVS audit showed that Officer Werner only queried "Chris Maurice Welch" on 03/27/2017 at approximately midnight. This was just hours prior to submitting the warrant application on 03/27/2017 and executing the warrant on 03/27/2017 as well. This contradicts Officer Werner's statements on Police reports, affidavit application, perjured testimonies during the motion hearing and trial hearing. It should also be noted (again) that this false information is what officer Werner used to apply for the warrant at the 3319 Aldrich Avenue location. If Officer Werner never spoke with a CRI on 03/24/2017, searched "Chris Maurice Welch" and printed a copy of the photo to show to a CRI, how could Officer Werner know a profile for a suspect (me) to conduct a surveillance? How could Officer Werner send Officer Schroeder to conduct a surveillance? BCA and DVS audit reports show that ***NO ONE*** in law enforcement searched "Chris Maurice Welch" or "Chris Kevin Welch" between. March 16[th, 2017] – March 26[th, 2017]. BCA has confirmed it is unlikely that a Surveillance took place because even if the information came in the form of a "TIP" while law enforcement agents were in their patrol car, officers would have to radio dispatch or an admin for information regarding a suspect, which never took place.

\*\* Please see exhibit #22A the search warrant affidavit submitted by Officer Werner

stating that he queried "Chris Maurice Randolph Welch" and conducted surveillance.

\*\*Please See exhibit #22B the police report submitted by Officer Werner stating that he

Queried "Chris Maurice Randolph Welch" and conducted surveillance.

\*\*Please see exhibit 22C the motion hearing testimony from Officer Werner stating that

He "Chris Maurice Randolph Welch" and conducted surveillance.

\*\* Please see exhibit 22D the trial hearing testimony OF Officer Werner

***(Ground 3: Argument B)*** Officer Schroeder stated during his testimony (at the trial hearing) that Officer Werner asked him to conduct surveillance at the 3319 Aldrich address, to see if he saw "Chris Maurice Welch" at the location. During the Trial hearing, Officer Schroeder testified to driving through the alley and witnessing me with an unknown black female inside of a SUV.

\*\*Please see exhibit #21A-21F (page 57-62 of the trial hearing).

But if Officer Werner never spoke to a CRI, never searched my name and never conducted a surveillance of his own, how could Officer Werner inform officer Schroeder of an investigation and instruct Officer Schroeder to conduct surveillance on a location or for a suspect he never received information or a tip about?

Furthermore, Officer Schroeder claims that he had also received information from a CRI that I was in possession of a firearm inside of a black Ford Taurus (which belongs to Terry Brown, that was never searched during the warrant execution) while with Michael Mulwa (the other person who was present during the warrant execution who stated in the interview with officer Werner that he only knew the

7

tenant "Ms. Fate-Baugh".)

Officer Werner never mentions in any police report having received information of a CRI from Officer Schroeder. Furthermore, Officer Werner Never mentions in the warrant affidavit application having multiple CRI's accuse me of drugs and firearms, nor does Officer Werner ever mention following up with Officer Schroeder's alleged CRI.

** Please reference Officer Werner's warrant affidavit, Police reports and testimonies where he never mentions Officer Schroeder passing along information to him regarding a CRI.

In addition, if Officer Schroeder claimed to have passed this information regarding a CRI witnessing me in Terry Brown's; why did Officer Werner testify that this vehicle was the ONLY vehicle that was not searched or seized during the warrant execution? My attorney claimed that it wouldn't be a good idea to interview or call Michael Mulwa to testify the validity of Officer Schroeder's allegations because he was a felon and would not be considered a credible witness. But the fact still remains that an evidentiary hearing should have taken place so that Officer Schroeder could have been impeached as a witness for the prosecutor, especially since video footage captured me at a restaurant in another city, during the time officer Schroeder claims to have witnessed me at the Aldrich Avenue address.

### (Ground Four: ERRORS OF LAW ISSUES. Continued)

The pretrial magistrate and the trial judge erred by denying evidentiary motions during pre-trial, trial and post-conviction. Motions to suppress evidence, dismiss the case and also a motion for newly discovered evidence; were also denied. Requests to have officer Schroeder impeached were denied as well as an objection to introducing the fleeing case was overruled. During my sentencing hearing Honorable Ann D Montgomery stated on the record,

"I understand. You have a number of issues that have been a concern of yours and that remain a concern. I think most of those relate to evidentiary matters at your trial. And I just want to make clear on the record, I think I said I was going to deny those motions and I want to make sure that I do deny them now so that you're not stuck in a situation where they weren't considered and ruled on. So, I'm going to deny all the motions as it relates to things that you have brought subsequent to conviction on your own so that that's clear.

　**Please see exhibit #23 of judge Ann D Montgomery denying evidentiary hearing

The Trial courts erred by allowing the prosecutor to offer evidence of me allegedly possessing drugs in a fleeing case that I was never charged with. Furthermore, in the current case I was not charged with any drugs. I was charged with a single firearm and no proof was ever submitted to prove my DNA was on any drugs located at either the fleeing scene or the warrant execution scene. The prosecution ran with the alleged story that I sold drugs, however, never Having a controlled buy to support the allegation, the prosecutor never had a witness testify to a drug purchase or any footage to support the claim; yet the accusations were allowed to create character during trial. Officer Werner's statements alone that I sold drugs, was substantial enough for the court to admit it into evidence during my trial with no proof.

Officer Werner and other officers were allowed to testify false allegations due to their civil authority. Law enforcement agents are equipped with many devices that would help prove criminal activity exists, yet none of these devices were ever used during my case. No device to corroborate surveillance, no device to corroborate a meeting with a CRI and no device or BWC (body worn camera) was used by any of the officers during the warrant execution to prove i possessed the evidence found at the scene of the crime or to prove where the firearms were located. But the factfinder was led to believe the recovered evidence belonged to me and was in "Plain View".

### *(Ground Five: PROSECUTORIAL MISCONDUCT. Continued)*

It was misconduct on the prosecution's behalf to allow Officer Schroeder to file a statement on a police report, to corroborate Officer Werner's story, days prior to my indictment. Officer Schroeder claimed to have witnessed me at the location, yet he had no proof. The prosecutor was aware that there was video footage that would contradict Officer Schroeder's testimony and the prosecutor still challenged the objection from my defense counsel and allowed Officer Schroeder to remain as a witness for the Government. The prosecutor was also aware of the objections to officer Werner's CRI misidentification, only then did the prosecutor change the label from a confidential reliable informant to merely a "TIP" received. The prosecutor also had access to the interview with Terry Brown, where you can clearly hear Terry Brown (after assuming officer Werner was no longer recording the interview) State that he (Terry Brown) was working for an officer Dan Zebro at the St. Paul Police Department. Terry Brown goes on to mention where the firearms came from (St. Cloud); Yet the prosecutor boldly denied on the record that Terry Brown had no involvement with the case. However, even while knowing Terry Brown's vehicle (that i had just exited) was the only vehicle that was never searched or seized, officer Schroeder claims to have gotten a CRI tip that i had guns in this same vehicle, Terry Brown's phone was never searched like everyone else's at the scene, Terry Brown is also a felon and he had knowledge of where the firearms came from; Terry Brown was the only suspect at the scene that was a felon who was not charged with any crime.

The prosecutor also offered evidence to mislead the jury regarding my involvement with the drugs seized at the unit, when I was not charged with any drugs in my case. forensic testing never concluded that my DNA was retrieved from any other evidence at the location. I was never charged with "Fleeing a peace officer" in regard to this made up situation with Officer Werner, but to deceive the fact finder and get a conviction, the prosecutor upheld the false allegations to use as a motive for why the firearm at the scene belonged to me, even though officer Werner had no proof of this alleged "fleeing case". Also, the prosecution allowed false statements from my probation officer, who was aiding them in the beginning of my case. At my arraignment hearing My probation officer gave a statement that was submitted by the prosecution, stating I was under the influence of marijuana during a furlough from the Ramsey County Workhouse, which the Ramsey County Workhouse confirmed was not true. The Ramsey County Workhouse verified that I never returned from a single furlough and tested positive for any drugs. Ramsey county workhouse policy after returning from a furlough, drug testing is required. Throughout the process of my case, the prosecutor along with Law Enforcement continuously furnished fabricated evidence against me for means of successfully wrongfully prosecuting me. In the Interest of Justice, I ask that the District Courts utilize its authority to (1) Vacate, and or (2) Set Aside from the conviction, Judgement. I would also like to be granted an evidentiary hearing to Challenge the aforementioned matters in my 2255.